```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

CENTENNIAL PLAZA PROP, LLC and
IMARC PROPERTIES, LLC,

No. 22-cv-01262 (MEF)(MAH)

**OPINION and ORDER**

      *Plaintiffs*,

  v.

TRANE U.S. INC., et al.,

      *Defendants*.

## Table of Contents

I. **Background**
    A. **The Allegations**
    B. **The Lawsuit**
    C. **The Motion**
II. **The Court's Approach**
III. **Disparity**
    A. **Background**
        1. **The 1985 Master Deed**
        2. **The 2001 and 2002 Amendments**
        3. **Legal Principles**
    B. **Analysis**
IV. **The Plaintiff's Claims**
    A. **Breach of Contract**
    B. **Breach of the Implied Covenant**
    C. **Specific Performance & Declaratory Judgment**

**V.   Conclusion**

\*   \*   \*

A business sold two pieces of real property.

It was then sued, on the theory that the sale violated certain other companies' right of first refusal.

The seller now moves to dismiss, arguing there was no such right.

The motion is granted as to those parts of it that are taken up here by the Court.

\*   \*   \*

**I.   Background**

   **A.   The Allegations**

The relevant allegations for now are as follows.

Two limited liability companies[1] jointly owned two of the four units in a condominium.  See Complaint[2] ¶¶ 5, 8.

A corporation[3] owned the two neighboring units.  See id. ¶¶ 1-2.

A document imposed certain restrictions on owners of units in the condominium.  See id. ¶ 14.  It was called the Master Deed and Declaration for the Creation and Establishment of a Condominium, see id., and is referred to from here as "the Master Deed."

The corporation sold the units it owned.[4]  See id. ¶¶ 28-29.

---

[1]   Centennial Plaza Prop, LLC and IMARC Properties, LLC.

[2]   This refers to the Amended Complaint filed in 2024.

[3]   Trane U.S. Inc.

[4]   The Complaint alleges that the corporation agreed to sell the units to "Three Cubed[, LLC], and/or F. Greek [Development, Inc.]"  Complaint ¶ 28.  The purchase rights were later allegedly assigned to Centennial Greek, another limited liability company.  See id. ¶ 29.

The two limited liability companies came to believe this was illegal.

The reason: the Master Deed was said to give incumbent condominium owners such as themselves a right of first refusal, see id. ¶¶ 20, 24, a right to buy the units before anyone else had the chance. But the corporation did not approach the limited liability companies before selling off its units. See id. ¶ 20. Rather, it posted them for sale on a public real-estate website. See id. ¶¶ 21-23.

### B. The Lawsuit

In light of the above, the limited liability companies ("the Plaintiffs") sued the corporation ("the Defendant").[5]

Of the Plaintiffs' claims against the Defendant, four are taken up here.[6]

The gist of each: by selling its two units through a public website, the Defendant violated the Master Deed's right-of-first-refusal provision --- and in doing so broke New Jersey[7] law. See id. ¶¶ 30-50.

---

[5] The Plaintiffs also sued the three entities listed in footnote 4. They too have moved to dismiss. Their motion is considered in a separate order that will issue later today.

[6] These are claims for specific performance (Count I); declaratory judgment (Count II); breach of contract (Count III); and breach of the implied covenant of good faith and fair dealing (Count IV). See id. ¶¶ 30-50. (There are other claims in the case, too --- for fraudulent inducement (Count V) and tortious interference with prospective contractual relations (Count VI). See id. ¶¶ 51-59. These claims are the subject of the order referenced in footnote 5.)

[7] All of the Plaintiffs' claims are common-law claims. The parties' briefs assume they arise under New Jersey law, see Motion to Dismiss at 19; Opposition Brief at 10-11, and so that is how the Court takes them. See Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) ("[W]here parties' briefs assume that a particular forum's law controls, such implied consent is sufficient to establish choice of law.") (cleaned up).

3

**C.   The Motion**

The Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

The motion is before the Court.

## II.  The Court's Approach

Before analyzing the motion in earnest, look to the two legal principles that set the stage here.

The first: in assessing a motion to dismiss, a court generally must focus only on the allegations laid out in the complaint. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

But there are exceptions to this rule, and one applies here.

Namely, a court may also consider anything that a plaintiff chooses to attach to its complaint.  See Sprauve v. W. Indian Co. Ltd., 799 F.3d 226, 232 n.6 (3d Cir. 2015); Pryor v. Nat'l Coll. Athletic Assoc., 288 F.3d 548, 559-60 (3d Cir. 2002); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the Master Deed and its relevant amendments were attached by the Plaintiffs to their initial complaint.  See Motion to Dismiss, Attachment 3, at 46-79; id., Attachment 4, at 1-62.

The Court can therefore look to them here.[8]

---

[8]  The Master Deed and its amendments were attached to the initial complaint, which was filed in state court.  See Notice of Removal, Exhibit A.  The case was then removed here.  The Plaintiffs' amended complaint is now the operative complaint.  (It is generally called "the Complaint" in this Opinion and Order.  See footnote 2.)  The amended complaint does not have any attachments.  But no one suggests this puts consideration of the Master Deed and its amendments out of bounds for the Court.  Indeed, those documents are quoted throughout the parties' briefs.  See Motion to Dismiss at 5-8, 13; Opposition Brief at 4.  Given all this, the parties have waived any possible argument that the Master Deed and its amendments cannot be considered here because they were appended to the first complaint but not the current one.  See, e.g., United States v. Dupree, 617 F.3d 724, 727-28 (3d Cir. 2010); see also Brown v. Certain Underwriters at Lloyds, London, 777 F. App'x 34, 36 (3d

4

A second legal principle: in assessing a motion to dismiss, a court must generally take the plaintiff's allegations as true. See, e.g., Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

But there is again a relevant exception.

"Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994); accord Lungu v. Antares Pharma Inc., 2022 WL 212309, at *5 n.14 (3d Cir. Jan. 25, 2022); In re NewStarcom Holdings Inc., 816 F. App'x 675, 678 n.7 (3d Cir. 2020); Boldrini v. Wilson, 542 F. App'x 152, 155 (3d Cir. 2013); 5A C. Wright & A. Miller, Fed. Prac. & Proc. Juris. ¶ 1327 (4th ed. 2024); Joyce v. Jaguar Land Rover N. Am. LLC, 2025 WL 675888, at *19 n.32 (Mar. 3, 2025).

The key question in this case is whether there is such a "disparity" --- between (a) the Master Deed and its amendments (which, as noted, the Court can consider) and (b) the Plaintiffs' main allegation.

The Plaintiffs' main allegation is this: there was a right to first refusal here. See Complaint ¶¶ 13-19.

This allegation is not based, for example, on any asserted verbal promises. See id.[9]

---

Cir. 2019). And in any event, it bears noting that an argument along those lines would have had an uphill climb. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (in deciding a 12(b)(6) motion, courts may look to undisputedly authentic documents that are integral to a plaintiff's claims); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (similar, as to items appearing in the record of the case).

[9] The Plaintiffs at one point suggest that, in a 2021 letter, the Defendant "recognized" the need to comply with the 1985 Master Deed. See Opposition Brief at 12. But the Plaintiffs do not develop any argument from this or cite any cases. They do not, for example, develop a course-of-conduct or estoppel argument. "[C]ourts generally should not address legal issues that the parties have not developed through proper briefing." Sw. Pa. Growth All. v. Browner, 121 F.3d 106, 122 (3d Cir. 2022). And the Court declines to do so here. See also Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument

5

Rather, it rests on the Master Deed and the right of first refusal that was written into it --- and on the argument that later amendments to the Master Deed did not cut the right of first refusal out of the Deed. See Complaint ¶ 19 ("Neither of the amendments to the Master Deed altered or eliminated the Right of First Refusal.").

In short, the Plaintiffs' main allegation (that there was a right of refusal) is entirely based on "written instrument[s]" (the Master Deed and its amendments) that were "annexed to a pleading" (the original complaint, see footnote 8). ALA, Inc., 29 F.3d at 859 n.8.

Therefore, the Plaintiffs' right-of-first-refusal allegation must be compared to the Master Deed and its attachments. See id.

If the two are consistent, the allegation counts, and it is taken as true on this motion to dismiss. See id.

If there is a meaningful enough "disparity" between them, the allegation is trumped --- it is put aside, and not considered. See id.

\*   \*   \*

In Part III, the Court takes up these issues.[10]

The Court's conclusion: there is a "disparity," because the Master Deed, as amended, does not include a right of first

---

consisting of no more than a conclusory assertion . . . will be deemed waived.").

[10] The Plaintiffs at one point suggest that such an analysis is not necessary, arguing that the motion to dismiss must be denied because a prior decision here is now the law of the case. But that doctrine is discretionary, see In re Celgene Corp., Inc. Sec. Litig., 747 F. Supp. 3d 748, 761 (D.N.J. 2024), and the Court will not apply it here. The referenced decision granted the Plaintiffs' motion to amend the initial complaint, to add one of the defendants listed at footnote 4 to Count VI. The United States Magistrate Judge determined that the amendment would not be futile. But today's decision does not involve that defendant or that count. And even if it did, the Magistrate Judge's decision noted that it did not consider the documents attached to the original complaint; as set out above, this decision does.

6

refusal. Accordingly, the Deed "control[s]," id., the Plaintiffs' allegation to the contrary drops away --- and there is therefore no right of refusal in play in this case.

In Part IV, the Court considers the implications of this for the Defendant's motion to dismiss.

The Court's holding: the motion must be granted. Among other things, the Plaintiffs cannot successfully claim breach of a contract (the Master Deed) by citing failure to comply with an obligation (to afford a right of first refusal) that is not actually a part of the contract.

### III. Disparity

To determine whether there is a "disparity" here, see Part II, the stepping-off point is some background, as to: the key language from the original Master Deed, see Part III.A.1, and its relevant amendments, see Part III.A.2, plus the legal principles that control interpretation of these documents. See Part III.A.3. From there, consider whether there is a disparity. See Part III.B.

#### A. Background

##### 1. The 1985 Master Deed

The original Master Deed dates to 1985. See Motion to Dismiss, Attachment 3, at 47. In relevant part, Article 17 of the Master Deed said this:

> 17(d) No Owner shall sell, convey or otherwise transfer its Unit without the prior written consent of the Board of Managers unless: . . .
>
> 17(d)(2) Before executing any such sale, conveyance or transfer, the Owner who proposes to do so (the "Offeror") gives written notice of all of the material terms of the proposed sale, conveyance or transfer to each of the other Unit Owners and allows them a period of 30 days within which to tender a binding written commitment to purchase the Offeror's Unit for the same or

7

> a higher price and on the same other
> terms . . . .

Motion to Dismiss, Attachment 3, at 74, art. 17(d).

This part of the Master Deed, Article 17(d), requires an Owner to choose --- between (a) asking the Board for permission before selling or (b) giving other Unit Owners a type of right of first refusal before selling.[11]

### 2.   The 2001 and 2002 Amendments

In 2001, the Master Deed was amended.  See id. ¶ 18.

Article 17 of the 2001 amendment started this way:

> Amendment to Declaration[12] Article 17.
> Article 17 of the Original Declaration is
> hereby amended and restated in its entirety,
> as follows:

Motion to Dismiss, Attachment 4, at 48.

The 2001 amendment also made a change to the body of Article 17(d):

> 17(d) In each instance where an Owner shall
> be required to obtain a consent of the Board
> of Managers, such consent shall not be
> unreasonably withheld, delayed, and/or
> conditioned.

Id. at 49, art. 17(d).

---

[11]  This the relevant provision of the Master Deed because, apparently without first getting Board approval, the Defendant (an Owner, see Motion to Dismiss, Attachment 3, at 37 ¶ 7) allegedly sold two Units (see Complaint ¶¶ 20-24) without first providing the Plaintiffs (Unit Owners, see id. ¶ 8) a 30-day chance to snap them up.

[12]  In the various amendments, the Master Deed is called the "Declaration."  Recall that the full name of the Master Deed is Master Deed and Declaration for the Creation and Establishment of a Condominium.

8

The 2001 amendment to Article 17 included various "instance[s]" in which an Owner would "be required to obtain a consent of the Board."[13]

But the 2001 amendment said nothing about the "instance" at issue here.  In its Article 17, the original 1985 Master Deed had said that Board consent was needed to sell if no 30-day right of first refusal had been provided to other unit owners.  See Motion to Dismiss, Attachment 3, at 74, art. 17(d).  But in the 2001 amendment to Article 17, that was gone; there were no references to such a right.

* * *

The Master Deed was again amended in 2002.  See Complaint ¶ 18.

The 2002 amendment opened as the 2001 amendment had.

> Amendment to Declaration Article 17.
> Article 17 of the Original Declaration is hereby amended and restated in its entirety, as follows:

Motion to Dismiss, Attachment 4, at 55.

It continued:

> 17(d) In each instance where an Owner shall be required to obtain a consent of the Board of Managers, such consent shall not be unreasonably withheld, delayed, and/or conditioned and shall be deemed given if no response is given within 30 days after the date of a request for consent.

Id. at 56, art. 17(d).

And from there, same as before.  As with the 2001 amendment, the 2002 amendment listed out a number of "instance[s]" that required Board consent.  See id. at 55, art. 17(b)(i) (same as the 2001 amendment); id. at 56, art. 17(b)(ii) (same); id. art.

---

[13] See Motion to Dismiss, Attachment 4, at 49, art. 17(b)(i) (requiring that certain building changes receive the Board's consent); id., art. 17(b)(ii) (lessees may further sublet their premises only with the prior consent of the Board); id., art. 17(c) (an Owner can typically mortgage its property only with the Board's consent).

9

17(c) (same). But as with the 2001 amendment, the key relevant "instance" was not there in the 2002 amendment; the right to refusal that had been in the 1985 Master Deed was not included.

### **3.** **Legal Principles**

The parties here assume that the Master Deed should be interpreted under New Jersey contract law. See Motion to Dismiss at 13-17, 19; Opposition Brief at 10-11. For the purposes of this motion, the Court follows their lead. See, e.g., Hernandez v. Twp. of Lyndhurst, 2025 WL 456950, at *8 (D.N.J. Feb. 10, 2025).[14]

"Under New Jersey law the construction of a written document is ordinarily a matter of law for the court unless the meaning is uncertain or ambiguous." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 224 n.6 (3d Cir. 1983).

How to tell whether an ambiguity exists? "[I]f the terms of the contract are susceptible to at least two reasonable alternative interpretations." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002).

And, in determining the meaning of provisions in a contract, "contract terms should be given their plain and ordinary

---

[14] And note that the parties' approach seems to make sense. The Plaintiffs' claims arise under New Jersey law. See footnote 7. When a claim arises under New Jersey law and requires interpretation of a contract, the contract must generally be interpreted under New Jersey law. See Tauriello v. Twp. of Edison, 288 F. App'x 825, 828 (3d Cir. 2008). The Master Deed is a kind of restrictive covenant --- in various ways, it limits an owner's ability to sell its property. See generally Restrictive Covenant, Black's Law Dictionary (12th ed. 2024) ("a negative covenant that limits the permissible uses of the land"; "[a] private agreement, usu. in a deed or lease, that restricts the use or occupancy of real property"). And courts applying New Jersey law have held that "[a] restrictive covenant is a contract and subject to general rules of contract construction." Millea v. Devireddy, 2023 WL 3856342, at *3 (N.J. Super. Ct. App. Div. June 6, 2023); see also, e.g., Cooper River Plaza East, LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003).

10

meaning." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019).

To assist with this, New Jersey courts often look to general-use dictionaries. See, e.g., Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552-53 (2022); Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 117-18 (2006); Est. of Misiewicz v. Suncor Assocs., 2006 WL 1479499, at *4 (N.J. Super. Ct. App. Div. May 31, 2006).

And to legal dictionaries, too. See, e.g., Boyle v. Huff, 257 N.J. 468, 480 (2024); Digital Grp., Inc. v. Sagitec Sols., LLC, 2017 WL 3568095, at *7 (N.J. Super. Ct. App. Div. Aug. 18, 2017); Est. of Keppel v. Angela's Angels Home Healthcare, 2019 WL 2060285, at *3 (N.J. Super. Ct. App. Div. May 9, 2019); Fitts v. Chase Manhattan Mortg. Corp., 2006 WL 3432296, at *4 (N.J. Super. Ct. App. Div. Nov. 30, 2006).

### B. Analysis

With this background in mind, come now to the basic questions. Is the 1985 Master Deed still legally operative to the extent it contained a right of first refusal? Has that right survived the 2001 and 2002 amendments to the Master Deed, which say nothing about a right of first refusal?

The Plaintiffs say: yes and yes. See Opposition Brief at 5. The Defendant goes the other way on each question. See Motion to Dismiss at 6-7.

The Court's conclusion: the Defendant has it right.

To see why, begin by noting that the law includes any number of background default rules as to how to harmonize one legal text with another. See, e.g., Kochetkova v. Garnet Health Med. Ctr., 697 F. Supp. 3d 276, 280 n.6 (D.N.J. 2023) (describing some of these in the context of multiple statutes); Vergopia v. Shaker, 191 N.J. 217, 227 n.6 (2007) (describing some of these in the context of a corporation's organic documents); In re Sapery's Est., 28 N.J. 599, 610 (1959) (describing some of these in the context of wills and codicils).

But sometimes, there is no need to fall back on whatever the default rule might otherwise be --- because the vacuum has been filled, and a clear choice has been made by the drafter of one legal text as to how it should be fitted together with another. See Kochetkova, 697 F. Supp. 3d at 280 (providing an example).

That is the case here.

The 2001 and 2002 amendments to Article 17 state explicitly how they are to be taken in relation to Article 17 of the 1985 Master Deed. Each amendment says:

> Article 17 of the Original Declaration is hereby amended and restated in its entirety, as follows:

Motion to Dismiss, Attachment 4, at 48, 55.

To read this phrase is to know, clearly, that the 2001 and 2002 Article 17 amendments to the Master Deed wholly displace Article 17 of the 1985 Master Deed, making it legally inoperative.

The words make this plain.[15]

Per the relevant dictionaries, to amend something means to change it.[16] So the 2001 and 2002 amendments to Article 17 change Article 17 of the 1985 Master Deed.

A changed version of a text is a new version of it. How do old and new texts live together? There are any number of possibilities.

But here, the amendments provide the answer: the new pushes aside the old wholly and completely, "in its entirety." The new Article 17 "restate[ment]" is not just a summary of the old

---

[15] Plain meaning may not be the only way to think through these issues. New Jersey law generally requires that contractual terms of art be given the meaning associated with them in the context from which they sprang up. See, e.g., 18W Holdings, Inc. v. Sing for Serv., LLC, 2025 WL 306561, at *5 (D.N.J. Jan. 27, 2025). "[A]mended and restated in its entirety" may well be a term of art. But no one argues the point, so the Court does not take it up.

[16] See Amend, v., sense 2, Black's Law Dictionary (12th ed. 2024) ("To change the wording of; specif., to formally alter"); Amend, v., sense 2b, Merriam-Webster, https://www.merriam-webster.com/dictionary/amend (last visited Mar. 13, 2025) ("to alter especially in phraseology"); Amend, v., sense I.1.a, Oxford English Dictionary, https://www.oed.com/dictionary/amend_v?tab=meaning_and_use#5513153 (last visited Mar. 13, 2025) ("to make changes to (a text); to modify, revise.").

12

Article 17[17] --- rather, it is now ("hereby") the whole statement of it, the "entirety" of it.

Consistent with this reading, courts routinely hold that "the language used in [a later agreement] --- that it 'amends and restates [the earlier agreement] in its entirety' --- is an objective manifestation of the parties' intention to supersede and replace the [the earlier agreement]." Berkshire Bank v. Pioneer Bank, 2021 WL 2763120, at *19 (N.Y. Sup. Ct. July 1, 2021) (cleaned up); see also, e.g., BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375, 401-02 (S.D.N.Y. 2011); L-3 Commc'ns Corp. v. OSI Sys., Inc., 2004 WL 42276, at *9 (S.D.N.Y. Jan. 8, 2004); In re Est. of Kneznek, 727 N.Y.S.2d 180, 182 (N.Y. App. Div. 2001).[18]

And drafters of model contractual amendments often suggest using "amended and restated in its entirety" as a way to signal that the old version of a provision is being completely swapped out for the new one. See, e.g., Amendment to LLC Agreement (DE),

---

[17] A "restate[ment]" can sometimes be just a summary. This can be true in ordinary language. See Restate, v., sense 2, Oxford English Dictionary, https://www.oed.com/dictionary/restate_v2?tab=meaning_and_use (last visited Mar. 13, 2025) ("[t]o state or express again or in a different way, now esp. more clearly"). And it can be true in the law. Think, for example, of American Law Institute "restatements" of the law. These are often (though not always) understood as efforts to summarize the law as it is, cf. Church v. Collection Bureau of Hudson Valley, Inc., 704 F. Supp. 3d 521, 537 (D.N.J. 2023), not to displace it. This contrasts with other approaches to legal restatement --- that are also based on an accumulation of older judicial materials, but aim to supersede them completely. See J.H.A. Lokin, The First Constitution of the Codex Justinianus, 9 Subseciva Groningana 343, 357 (2014) (discussing one such example).

[18] Courts routinely assume this point, too. See, e.g., Parrett v. Am. Ship Bldg. Co., 990 F.2d 854, 857 (6th Cir. 1993); Pearson v. Univ. of Chi., 2018 WL 3214219, at *2 (N.D. Okla. June 29, 2018); In re TOUSA, Inc., 2011 WL 1627129, at *1 (S.D. Fla. Mar. 4, 2011); Co-Investor, AG v. Fonjax, Inc., 2009 WL 2390227, at *8 (N.D. Cal. Aug. 3, 2009); Zahm v. Metro. Life Ret. Plan, 2008 WL 11419005, at *1, *4-5 (S.D. Ga. Mar. 3, 2008).

13

Practical Law Standard Document W-043-7975 at ¶ 2(g), note ("If there are multiple changes to an existing provision, the drafter may prefer to restate the revised provision in full in the amendment . . . . This allows the reader to review the new revised provision more easily by seeing it set out in full in one place[.]"); Amendment to Acquisition Agreement, Practical Law Standard Document W-005-5139 at ¶ 2(b), note (similar).

\*   \*   \*

There is no reason in this case to depart from any of the above.

If the 2001 and 2002 amendments to Article 17 do not entirely supersede the 1985 version of Article 17, then presumably the later amendments merely supplement the original. And this appears to be the Plaintiffs' argument. See Opposition Brief at 5.

But many provisions of the 2001 and 2002 amendments to Article 17 are very closely similar to provisions in the 1985 version of Article 17.[19]

There is no reason to supplement a contract by folding into it virtual carbon copies of provisions it already has. See Hardy ex rel. Dowdell v. Abdul-Martin, 198 N.J. 95, 103 (2009) ("A basic principle of contract interpretation is to read the document as a whole in a . . . common sense manner.")

And the illogic of this is recognized in New Jersey law, which disfavors interpretations of contracts that would create redundancy. See Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956) ("[A]ll parts of the writing and every word of it, will, if possible, be given effect[.]"); see also Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) ("A contract should not be interpreted to render one of its terms meaningless.") (cleaned up); Focazio v. Aboyoun, 2025 WL 582369, at *6 (N.J. Super. Ct. App. Div. Feb. 24, 2025) (same); Cumberland Cnty. Improvement Auth. V. GSP Recycling Co., Inc., 358 N.J. Super. 484, 497 (App. Div. 2003) (same).

---

[19] The first sentence of the amended Article 17(c), for example, is nearly identical to the original Article 17(e). And the amended versions of Articles 17(a), 17(b)(i), and 17(b)(ii) overlap to a good extent with various provisions in the original Deed. Compare Motion to Dismiss, Attachment 4, at 55-56 with Motion to Dismiss, Attachment 3, at 71-75.

But that is what the Plaintiffs' proposed interpretation would do. It would treat both Time 1 and Time 2 contractual provisions as having continued effect --- even though that reading makes redundant many of the provisions added into the mix at Time 2.

By contrast, the Defendant's approach eliminates this difficulty. Some Time 1 and Time 2 provisions may essentially be mirror images of one another. But on the way of thinking advocated by the Defendant, that makes no difference, because the Time 1 provisions have no effect --- they were displaced "in their entirety" by the changes at Time 2.

And one more difficulty with the Plaintiffs' proposed interpretation. If the 1985 Master Deed is in play, and so are the 2001 and 2002 amendments, then some small contradictions are created between them --- as to notice period, for example, compare Motion to Dismiss, Attachment 3, at 73, art. 17(c)(v) with Motion to Dismiss, Attachment 4, at 56, art. 17(b)(v), and the required insurance type, compare Motion to Dismiss, Attachment 3, at 73, art. 17(c)(iv), with Motion to Dismiss, Attachment 4, at 56, art. 17(b)(iv).

But contracts should not be read in ways that open up internal contradictions. See Forman v. Levenson, 2020 WL 359672, at *7 (N.J. Super. Ct. App. Div. Jan. 22, 2020); 89 Water St. Assocs. v. Reilly, 2019 WL 4793073, at *7 (N.J. Super. Ct. App. Div. Oct. 1, 2019); Universal N. Am. Ins. Co. v. Bridgepointe Condo. Assoc., Inc., 456 N.J. Super. 480, 494 (App. Div. 2018). That is what the Plaintiffs' proposed reading does --- but not the Defendant's.

*   *   *

Where things stand:

Article 17 of the 1985 Master Deed (which contained a kind of right of first refusal) was superseded "in its entirety" by the 2001 and 2002 amendments (which do not). Therefore, the Master Deed, as amended, contains no operative right of first refusal. The Plaintiffs' allegation that there was such a right must be put aside --- it rests on an understanding of the Master Deed, but that understanding is inaccurate.

15

**IV.  The Plaintiff's Claims**

The conclusion set out just above requires the dismissal of those of the Plaintiffs' claims that are taken up in this opinion.  See footnote 6.  To see this, tick through each claim now.

    **A.  Breach of Contract**

Under New Jersey law, a breach of contract claim includes four elements:

> [F]irst, that the parties entered into a contract containing certain terms; second, that [the] plaintiffs did what the contract required them to do; third, that [the] defendants did not do what the contract required them to do, defined as breach of the contract; and fourth, that [the] defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

Goldfarb v. Solimine, 245 N.J. 326, 338 (2021) (cleaned up).

Look to the third: the Plaintiffs must show that the Defendant ran afoul of what the contract "required them to do."  Id.

Here, the allegation is that the Defendant sold two units in 2022 but "failed and refused to provide [the] Plaintiffs with the Right of First Refusal."  Complaint ¶¶ 29, 40.

But the right of first refusal fell out of the Master Deed about 20 years earlier, when it was amended in 2001.  It no longer included a right of first refusal by the time the Defendant was selling the units.  See Part III.B.

The Plaintiffs cannot make out a "plausible," see Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009), breach-of-contract claim by invoking a contractual provision that no longer had any effect.  Therefore, the claim must be dismissed.

    **B.  Breach of the Implied Covenant**

Next, look to the Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

16

In New Jersey, "[e]very contract contains an implied covenant of good faith and fair dealing." Wade v. Kessler Inst., 172 N.J. 327, 340 (2002). And that covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (cleaned up). More generally, "[g]ood faith conduct is conduct that does not violate community standards of decency, fairness or reasonableness." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005) (cleaned up).

The alleged breach of the implied covenant, as set forth in the Complaint: the Defendant's failure "to provide [the] Plaintiffs the option to purchase certain real property in accordance with a Right of First Refusal." Complaint ¶ 44.

As to this claim, the Court's conclusion that the amended Master Deed no longer contained a right of first refusal is not the end of the road. That is because "a party's performance under a contract may breach that implied covenant even though [its] performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001).[20]

But still, the Plaintiff's implied covenant claim does not pass muster.

First, the drafting history of the Master Deed, see Part III.A.1-2, shows that the Deed was actively amended to eliminate any right of first refusal. It would hardly preserve anyone's ability to "receive the fruits," Wade, 172 N.J. at 340, of the amended Master Deed by reading into it a term that had been explicitly removed. Quite the opposite. See Est. of Cotton v. Senior Plan. Servs., 2020 WL 7022740, at *19 (D.N.J. Nov. 30, 2020) (applying New Jersey law: "[The] Plaintiffs cannot utilize the implied covenant of faith and fair dealing to supplement the contract with additional terms which contradict the parties' clearly laid out contractual expectations."); cf. ACBB Bits, L.L.C. v. 550 Broad St., LLP, 2011 WL 5838737, at *14-15 (N.J. Super. Ct. App. Div. Nov. 22, 2011) (no breach of the implied covenant where one party's interpretation and application of a

---

[20] This is a distinct aspect of New Jersey law. See Wilson, 168 N.J. at 244 ("Other jurisdictions regard the implied covenant of good faith and fair dealing as merely a guide in the construction of explicit terms in an agreement.").

17

contractual provision did not strip the counterparty "of the benefit of the bargain").

Second, there is no suggestion here of unfair surprise or unreasonableness of the sort that might violate "community standards." Brunswick Hills, 182 N.J. at 224. The parties are commercial entities, and presumably sophisticated ones. And there is no allegation that the rug was pulled out from under them --- that they bought a unit that had been subject to a right of first refusal, only to have the right later yanked away from them unfairly. See id. at 214, 226 (landlord breached the implied covenant by evading a tenant's requests to close a lease option and purposefully failing to point out a deficiency in the tenant's effort to exercise that option until after the relevant deadline passed; "a plaintiff may get relief if it relies to its detriment on a defendant's intentional misleading assertions"); Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 129-30 (1976) (the defendant breached the implied covenant by withholding its plans to terminate the parties' distribution agreement while simultaneously encouraging the plaintiff to expand its facilities).

Third, the Plaintiffs' implied-covenant claim does not rest on any case-specific allegations as to why the implied covenant should be used here to essentially read a right of first refusal into the Master Deed. In the absence of any case-specific reason to proceed that way, the Plaintiffs' argument is necessarily generic --- and therefore amounts to a contention that a right of first refusal should be judicially read into all New Jersey real property covenants.

This would be a dramatic step. It might arguably be a positive --- rights of first refusal might generate some social gains by incentivizing property holders to make certain investments. See Marcel Kahan, et al., First-Purchase Rights: Rights of First Refusal and Rights of First Offer, 14 Am. L. & Econ. Rev. 331, 346-54 (2012). Or it might arguably be a deck-scrambling negative --- rights of first refusal are valuable, see id. at 332-38, and reading them into deeds would be to transfer value to some people in the real estate ecosystem, with others implicitly paying for the windfall. Cf. David I. Walker, Rethinking Rights of First Refusal, 5 Stanford J.L., Bus. & Fin. 1, 16 (1999).

But across-the-board arguments are for the New Jersey legislature to take up, or the New Jersey Supreme Court --- not

18

for this Court, which is charged with applying New Jersey law, not remaking it.[21]

The right to freely sell off one's property is "a right that is often in the bundle of property rights." United States v. Craft, 535 U.S. 274, 284 (2002); see also Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) ("Property rights in a physical thing have been described as the rights to possess, use and dispose of it.") (cleaned up).  If that right is to be whittled back under New Jersey law, by limiting who must get first crack at buying --- then that limitation is for New Jersey authorities to impose should they wish to, not this Court.

Fourth, there is no suggestion in the Plaintiffs' brief that their proposed approach finds meaningful support in New Jersey law --- and that is a final reason not to go the Plaintiffs' way.  Federal courts sitting in diversity, as here, "may not . . . expand state law in ways not foreshadowed by state precedent." Spence v. ESAB Grp., Inc., 623 F.3d 212, 217 (3d Cir. 2010) (cleaned up); see also Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 253 (3d Cir. 2010); City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 127 (3d Cir. 1993).

In a nutshell: the Defendant did not "behave inequitably," Brunswick Hills, 182 N.J. at 231, by failing to abide by a right of first refusal that was no longer expressly part of the controlling contract.  The claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

### C. Specific Performance & Declaratory Judgment

Finally, the Plaintiffs seek specific performance, to compel the Defendant to sell the property in question to the Plaintiffs "pursuant to the terms of the Right of First Refusal," Complaint

---

[21] See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426 (1996) ("Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law."); Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").

19

¶ 35, and a declaratory judgment that the Plaintiffs may exercise the alleged right. See id. ¶ 37.

But absent an enforceable right of first refusal in the amended Master Deed, see Part IV.A-B, there are no grounds for the Court to grant such relief. Therefore, these claims also fail.

## V.   Conclusion

The Defendant's motion to dismiss is granted as to Counts I, II, III, and IV.

IT IS on this 17th day of March, 2025, so ORDERED.

_____
Michael E. Farbiarz, U.S.D.J.